OPINION
{¶ 1} Defendant-appellant, Thomas Juenger, appeals his conviction in the Butler County Court of Common Pleas for aggravated possession of drugs. We affirm the conviction.
 {¶ 2} In November 2001, the Drug Abuse Reduction Task Force ("DART") conducted surveillance on appellant's home in Sharonville, Ohio. The Sharonville Police Department had information from an anonymous source that drug activity was occurring in appellant's garage. The Sharonville Police were familiar with appellant as a result of prior drug convictions and domestic violence complaints.
 {¶ 3} As part of the investigation, police collected evidence from appellant's discarded trash. On November 5, 2001, police recovered aluminum foil covered with burnt methamphetamine residue. On November 19, 2001, police again recovered aluminum foil covered with burnt methamphetamine residue and a glass pipe used to smoke the methamphetamine. On November 26, 2001, police recovered aluminum foil with methamphetamine residue and a plastic bottle with methamphetamine residue. Given the amount of aluminum foil discovered in appellant's trash, police estimated that methamphetamines had been used at appellant's house approximately nine times in seven days.
 {¶ 4} DART obtained a search warrant for appellant's house. On December 1, 2001, police knocked on appellant's door and announced their presence. There was no response so police used a battering ram to enter the house. Once inside, police found appellant, his wife, his son, and a friend in the residence. After securing the occupants, police informed appellant of hisMiranda rights and then searched the garage.
 {¶ 5} In the garage, police discovered a scale with methamphetamine residue; two false-bottomed containers, one of which contained a large quantity of methamphetamine; burnt aluminum foil; tube pipes; and $1,802 in cash.
 {¶ 6} While police were still searching appellant's residence, appellant told Officer Larry Stokes that the methamphetamines were his, that he had a drug problem, and that he might need help getting over the drug problem. Appellant was taken to the police station, where he was again informed of hisMiranda rights. He told Officer Jason Boyd that the methamphetamines police discovered were his and that he had forgotten he had drugs in his garage. Appellant also stated that he obtained methamphetamines from various sources. However, he was unable to provide the police with the names of his sources.
 {¶ 7} Appellant was indicted for aggravated possession of drugs. During the pendency of his case, appellant directed his trial counsel not to provide him with any further services or assistance for his upcoming trial. Appellant's counsel filed a motion to withdraw as counsel. Appellant indicated to the trial court that he would hire an attorney for the upcoming trial, or he would be "ready to go," pro se, if he did not hire counsel. Appellant acknowledged that he understood the crime with which he was charged and that he could face a prison term of up to five years. The state then offered appellant a plea bargain. However, appellant did not accept the plea.
 {¶ 8} Appellant's trial began on December 19, 2002. Appellant appeared without an attorney and represented himself pro se. The jury found appellant guilty of aggravated possession of drugs. The court sentenced appellant to one year in prison. Appellant appeals the conviction raising four assignments of error:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The trial court erred to the prejudice of defendant where it allowed him to represent himself without holding a hearing to determine whether defendant understood his rights and intelligently relinquished the right to representation by competent counsel."
 {¶ 11} Appellant argues that the trial court "failed to ensure that [his] decision to waive competent counsel and proceed pro se, [was] made knowingly, intelligently, voluntarily, and with the understanding of the dangers of self-representation." Therefore, appellant maintains that "allowing [him to] waive counsel constitutes reversible error."
 {¶ 12} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a state criminal defendant the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects. State v.Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525. To establish an effective waiver of counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. Gibson, 45 Ohio St.2d at paragraph two of the syllabus.
 {¶ 13} Although there is no prescribed colloquy in which the trial court and a pro se defendant must engage before a defendant may waive his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. State v. Jackson (2001),145 Ohio App.3d 223, 227. Given the presumption against waiving a constitutional right, the trial court must ensure the defendant is aware of "the dangers and disadvantages of self-representation" and that he is making the decision with his "eyes open." Faretta, 422 U.S. at 835.
 {¶ 14} In determining the sufficiency of the trial court's inquiry in the context of the defendant's waiver of counsel, the court in Gibson at 377, applied the test set forth in VonMoltke v. Gillies (1948), 332 U.S. 708, 723, 68 S.Ct. 316, as follows:
 {¶ 15} "To be valid such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."
 {¶ 16} Additionally, Crim.R. 44(C) requires that the trial court obtain a signed, written waiver by the defendant in "serious offense cases." A "serious offense" is defined as any felony and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months. Crim.R. 2(D). The absence of a signed waiver in a serious offense case constitutes reversible error. State v. Martin, Cuyahoga App. No. 80198, 2003-Ohio-1499. However, there is competing appellate authority to suggest that the failure to secure a written waiver of the right to counsel is subject to a "substantial compliance" standard, and that, so long as the criteria announced in VonMoltke, 332 U.S. at 723, 68 S.Ct. 316, are substantially met, a conviction need not be overturned in the absence of a showing of prejudice. State v. Longworth, Allen App. Nos. 1-01-08, 1-01-51, 2001-Ohio-2295, at *4, citing State v. Fair (Sept. 17, 1996), Franklin App. Nos. 96-APA01-93, 96-APA01-94; State v.Overholt (1991), 77 Ohio App.3d 111, 115.
 {¶ 17} In the instant case, on October 23, 2002, appellant wrote a signed letter to the trial court stating, "I, Thomas H. Juenger notify my attorney and the court that I am terminating my attorney effective immediately. I have notified my attorney today that I am not satisfied with his representation and therefore, terminate him. I will represent myself at trial on November 6 before Judge Crehan, or hire other counsel before that date."
 {¶ 18} On November 5, 2002, the trial court asked appellant if he had hired another attorney. Appellant stated that he "can't afford one." However, appellant admitted that he was employed, made about $22,000 a year, owned a car, and owned his home. The court determined that appellant was not indigent and informed him that he could "get a lawyer or you can defend yourself."
 {¶ 19} On November 17, 2002, appellant again told the trial court that he had not hired an attorney. The court asked appellant, "[d]o you understand what you're charged with?" Appellant replied, "yes, sir." The court also asked, "[a]nd you understand that this is a felony of the third degree?" Appellant replied, "yes, sir." The court asked, "[a]nd you understand that you can go to prison for a period of up to five years?" Appellant replied, "yes, sir."
 {¶ 20} Appellant indicated his understanding of the charges against him, the statutory offenses included within them, and the range of allowable punishments thereunder. We find that the requirements announced in Von Moltke have been substantially met, and that appellant's waiver was adequately determined by the trial court to be knowing and intelligent. Furthermore, on October 23, 2002, appellant wrote a signed letter to the trial court stating, "I, Thomas H. Juenger notify * * * the court that I am terminating my attorney effective immediately * * * I will represent myself at trial on November 6 before Judge Crehan * * *." We find that the signed writing constitutes sufficient written waiver of counsel. Consequently, the first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "Prosecutorial misconduct prejudicially affected defendant's substantial rights, and he was subsequently denied a fair trial."
 {¶ 23} Appellant argues that "where the prosecution undeniably commented on Defendant's failure to testify, Defendant's Fifth Amendment right to remain silent was violated, and as a result he was denied a fair trial." The state may not comment on a defendant's failure to testify. Griffin v.California (1965), 380 U.S. 609, 85 S.Ct. 1229.
 {¶ 24} At the end of closing arguments, the prosecutor stated, "there is no evidence, none that has been presented to you to refute — the defendant hasn't denied that he admitted to the officers that this was his methamphetamine. He's not denied that. He's not — he's not testified. The only evidence that you have about that is from these two witnesses if that is what was said. I'm not even sure that was true." However, appellant failed to object to the prosecutor's comments.
 {¶ 25} Appellant argues that "the prosecutor took advantage of the fact that [he], proceeding pro se, would not object to what was said." Nevertheless, appellant chose to waive his right to counsel and proceed pro se, as such, he is held to the same standard as an attorney. Therefore, he is bound by the same rules and procedures as litigants who retain counsel and must accept the results of his own mistakes and errors. State v. Gordo,
Franklin App. No. 03AP-490, 2003-Ohio-6558, at ¶ 14, citingMeyers v. First Natl. Bank (1981), 3 Ohio App.3d 209, 210.
 {¶ 26} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982),69 Ohio St.2d 583, 589. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments.State v. Maurer (1984), 15 Ohio St.3d 239, 269. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136,141, 1996-Ohio-227.
 {¶ 27} While the state may not comment on a defendant's failure to testify, the state may "comment upon the relative strength of the state's case, which includes commenting upon the fact that the state's case has not been rebutted." State v.Ferguson (1983), 5 Ohio St.3d 160, 163. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v. DeChristoforo
(1974), 416 U.S. 637, 647, 94 S.Ct. 1868.
 {¶ 28} The context shows that the prosecutor's comments dealt with appellant's lack of evidence to refute his own statement that the methamphetamines were his, not merely with appellant's failure to testify. Even assuming, arguendo, that the prosecutor's comments were improper, they did not deny appellant a fair trial. The comments during closing argument were isolated and tempered by other comments to the jury indicating that it was up to the jury to make the final determinations as to the facts. While we do not condone the prosecutor's comment, and strongly advise against such conduct in the future, we believe that in this particular case and limited to these specific facts, the jury would have nonetheless convicted appellant absent the prosecutor's comment. Accordingly, appellant's second assignment of error is overruled.
 {¶ 29} Assignment of Error No. 3:
 {¶ 30} "The trial court erred to the prejudice of defendant by refusing to enforce defendant's constitutional right to compulsory process."
 {¶ 31} Appellant argues that "the court has the duty to assure the preservation of his constitutional right to compulsory attendance of the witnesses to testify on [his] behalf" after he issued subpoenas for the witnesses.
 {¶ 32} When a subpoena is left at a witness' usual place of residence, or business location, or place of employment, and the witness has actual knowledge of the subpoena, service of summons has been completed. See State v. Castle (1994),92 Ohio App.3d 732, 734; Denovchek v. Trumbull County Bd. of Commissioners
(1988), 36 Ohio St.3d 14; Crim.R. 17(D). A witness's failure to obey a duly served subpoena constitutes contempt of court.Castle at 735.
 {¶ 33} Appellant's trial was held on Thursday, December 19, 2002. Appellant filed five subpoenas with the clerk of courts on Friday, December 13, 2002. The clerk of courts issued the subpoenas by certified mail on Tuesday, December 17, 2002. Two of the subpoenas were served on December 19, 2002, and the certified mail return receipt was received on December 23, 2002. Two of appellant's subpoenas were served on December 23, 2002, and the certified mail return receipt was received on December 23, 2002. The fifth subpoena was returned, marked by the U.S. Post Office with the legend "unclaimed."
 {¶ 34} Four of the witnesses appellant subpoenaed were officers who were present because they were also prosecution witnesses. The fifth subpoena that was returned unclaimed was issued to Tony Rush. At trial on December 19, 2002, appellant asked for the court to compel Rush's appearance when he did not arrive for trial. However, when the trial court asked appellant about the subpoena, appellant informed the court that he did not think any "of them are going to make it to the people that I subpoenaed out" because they were issued on December 17, 2002.
 {¶ 35} The trial court informed appellant "[t]here is not much I can do about it unless he's served." The court proceeded to ask appellant if he could "get somebody on the phone and get [Rush] in here?" Appellant replied that "[t]his guy is hiding and running." To which the trial court asked, then "what makes you think they can get him served."
 {¶ 36} The record does not demonstrate that Rush had actual knowledge of the subpoena. Consequently, a valid service of subpoena was not completed. Therefore, it was not error for the trial court to refuse to compel Rush's appearance. The third assignment of error is overruled.
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "The judgment of the trial court is contrary to the manifest weight of the evidence."
 {¶ 39} Appellant argues that he "vehimently [sic] challenges the credibility of the State's witnesses." Appellant maintains that the testimony of defense witnesses Dennis Carroll and Larry Taulbee, who testified that Tony Rush came over to appellant's house with methamphetamines, "calls into question the State's witnesses and raises a reasonable doubt as to [his] guilt."
 {¶ 40} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the resolution of conflicting testimony at the trial level. Id. at 389.
 {¶ 41} The standard for reversal for manifest weight of the evidence has been summarized as follows:
 {¶ 42} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 43} Appellant was charged with aggravated possession of drugs, in violation of R.C. 2925.11(A) which states: "[n]o person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 44} "* * *.
 {¶ 45} "(1)If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II * * *, whoever violates division (A) of this section is guilty of aggravated possession of drugs."
 {¶ 46} The evidence demonstrates that DART conducted surveillance on appellant's home. Police collected the following from appellant's trash: aluminum foil with burnt methamphetamine residue, a glass pipe used to smoke the methamphetamine, and a plastic bottle with methamphetamine residue. Police obtained a search warrant for appellant's house and discovered methamphetamine, a Schedule II drug, in an amount greater than the bulk amount, hidden in a false-bottomed container in appellant's garage. Police also discovered in appellant's garage a scale with methamphetamine residue on it, pipes for smoking the methamphetamines, and $1,802 in cash. Furthermore, Officer Stokes testified that appellant admitted that the methamphetamines were his. Officer Boyd testified that appellant admitted that the methamphetamines were his and that he obtained methamphetamines from various sources.
 {¶ 47} However, appellant's friends, Dennis Carroll and Larry Taulbee, testified that Tony Rush brought methamphetamines over to appellant's garage in a false-bottomed container. Appellant maintains that Tony Rush used his scale, left the container of methamphetamines in his garage, and that the $1,500 of the $1,802 found in the garage was a payment made by Taulbee to appellant for repairing Taulbee's Harley Davidson motorcycle.
 {¶ 48} After reviewing the record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and in resolving conflicts in the evidence, we cannot determine that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The convictions are supported by the weight of the evidence. The fourth assignment of error is overruled.
 {¶ 49} Judgment affirmed.
Walsh and Powell, JJ., concur.