OPINION *Page 2 
{¶ 1} Defendant-appellant Terry Hupp ("Hupp") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of six counts of gross sexual imposition and seven counts of rape. For the reasons set forth below, the judgment is affirmed.
 {¶ 2} On August 16, 2007, the Allen County Grand Jury indicted Hupp on six counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and seven counts of rape in violation of R.C. 2907.02(A)(1)(b). One of the rape charges contained a force specification and two of the charges contained age specifications. Counts 1-5 involved the first victim, C.J. . Counts 6-9 involved a second victim, K.J. . The remaining counts involved the third victim, S.J. . A trial was held from March 31 to April 4, 2008. On April 4, 2008, the jury returned a verdict of guilty to all counts as charged in the indictment. Hupp was immediately sentenced to a term of thirty years to life in prison. Hupp appeals from this judgment and raises the following assignments of error.
 First Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to indictment by a grand jury when the trial court denied his motion to dismiss and for in camera review of the grand jury proceedings. *Page 3 
 Second Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to fair notice of the charges against him when the trial court denied his motion to dismiss and for in camera review of the grand jury proceedings.
 Third Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to due process of law when the trial court denied his motion to dismiss and for in camera review of the grand jury proceedings.
 Fourth Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to protection from twice being placed in jeopardy for the same offense when the trial court denied his motion to dismiss and for in camera review of the grand jury proceedings.
 Fifth Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to a fair trial by a jury representing a fair cross-section of the community when the trial court selected talesmen without use of a jury wheel or automation data processing.
 Sixth Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to confront his accusers, and violated the Ohio Rules of Evidence, when the trial court refused to allow [Hupp] to confront his accusers with clear contradictions in prior written statements by the accusers. *Page 4 
 Seventh Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to confront his accusers, and violated the Ohio Rules of Evidence, when the trial court allowed one accuser to testify concerning hearsay evidence, to express an opinion based on that hearsay, and to express an opinion as to the veracity of an accuser based upon the same.
 Eighth Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to confront his accusers when the trial court allowed the prosecution to introduce an exhibit that contained hearsay without a proper foundation from the declarant and opportunity to cross-examine that declarant as to that hearsay statement.
 Ninth Assignment of Error [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to compel witnesses to appear on his behalf when the trial court did not intervene in the non-service of defense subpoenas.
 Tenth Assignment of Error The verdict for each count, and for each specification, was against the manifest weight of the evidence.
 Eleventh Assignment of Error The verdict for each count, and for each specification, was not supported by sufficient evidence.
 Twelfth Assignment of Error *Page 5 [Hupp] was denied his right under the United States Constitution and under the Ohio Constitution to a fair trial because of the cumulative effect of errors by the trial court.
 {¶ 3} In the first assignment of error, Hupp argues that the trial court erred by denying his motion to dismiss and denying his request for an in camera review of the grand jury proceedings. Hupp argues that without the review, he cannot determine if the State presented evidence of specific instances or just general allegations of wrongdoing. In essence, Hupp is arguing that the trial court should have reviewed the transcript of the grand jury proceedings to determine if the indictment was based upon specific allegations or to determine if it was based upon general allegations that would make it insufficient and require that the indictment be dismissed. This court has addressed this issue previously in State v. Egler, 3d Dist. No. 4-07-22, 2008-Ohio-4053.
 {¶ 4} In Egler the appellant claimed that "because the indictment failed to specify specific acts, the prosecution was able to amend the indictment through a bill of particulars; and, that the trial court wrongfully denied his motion for review by the trial court in camera of the grand jury transcripts to determine the nature of the specific facts considered by the grand jury and included in the indictment." Id. at ¶ 10. The appellant was charged with ten counts of engaging in sexual conduct with a victim under the age of thirteen. This court held that the indictment correctly stated offenses, which makes it valid on its face. Id. at ¶ 16. The *Page 6 
appellant also challenged the sufficiency of the evidence before the grand jury. This court then held that where an indictment is facially valid, a defendant is precluded from challenging the sufficiency of the evidence before the grand jury." Id. at ¶ 17 (citing State v.Williams, 3d Dist. No. 1-01-63, 2002-Ohio-3623 and State v. Nields,93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d 859).
 {¶ 5} Here, Hupp was charged with gross sexual imposition and rape. The indictment specified a range of dates for each offense and then recited the appropriate statutory language. Although specific details of acts are not mentioned, Hupp is given the approximate time frames and notice of the offense for which he is charged. Thus, the indictment is valid on its face and the trial court did not err in refusing to dismiss it. Since it was valid on its face, Hupp is precluded from challenging the sufficiency of the evidence presented to the grand jury.Egler, supra. Without some form of affirmative proof that irregularity in the process exists or that an error has occurred, this court presumes regularity. Id. at ¶ 17. Hupp has presented nothing more than suppositions of what may have happened, not affirmative proof. Therefore, this court must presume the regularity of the grand jury proceedings. The first assignment of error is overruled.
 {¶ 6} In the second assignment of error, Hupp claims that the trial court erred in not dismissing the indictment because the indictment, along with the supplemental bills of particulars, was too vague to provide adequate notice. This *Page 7 
alleged failure gives rise to the third assignment of error which claims that the failure to dismiss the indictment violated his constitutional due process rights. Hupp specifically argues that the time range stated in the indictment was too broad to permit him to prepare a defense. Since these assignments of error are based upon the same argument, they will be addressed concurrently.
 Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a statement that the accused has committed some public offense therein specified. * * * The General Assembly, in declaring what shall be sufficient in an indictment, provided, among other things, that it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment. R.C. 2941.03(E). It is also provided in R.C. 2941.08, that "an indictment or information is not made invalid, and the trial judgment, or other proceedings stayed, arrested, or affected: * * * (C) For stating the time imperfectly; * * *"
 * * *
 Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges.
 {¶ 7} State v. Sellards (1985), 17 Ohio St.3d 169, 170-171,478 N.E.2d 781 (citations omitted). To determine if the vague description of times violates a defendant's due process rights, three prongs must be satisfied. Id. First, the time and date must be an element of the offense. Id. Second, did the State engage in full disclosure of the date and time. Id. Finally, did the failure to limit the time frame prejudice the defendant's ability to defend himself. Id. "It is well-stated *Page 8 
that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." State v. Fitch (Feb. 6, 2001), 10th Dist. No. 00AP-680.
 {¶ 8} In this case, the indictment in this case stated in pertinent part as follows.
 COUNT ONE: * * * [O]n or about the 1st day of April, 2006 to on or about the 30th day of April, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] * * *.
 COUNT TWO: * * * [O]n or about the 1st day of November, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] *
 * *.
 COUNT THREE: * * * [O]n or about the 1st day of November, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age;
 SPECIFICATION
 * * * [Hupp] * * * did purposely compel the victim to submit by force or threat of force in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT FOUR: * * * [O]n or about the 1st day of November, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less *Page 9 than thirteen years of age; in violation of [R.C. 2907.02(A)(1)(b)]
 * * *.
 COUNT FIVE: * * * [O]n or about the 1st day of November, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT SIX: * * * [O]n or about the 15th day of May, 2006 to on or about the 31st day of August, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT SEVEN: * * * [O]n or about the 15th day of May, 2006 to on or about the 31st day of August, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT EIGHT: * * * [O]n or about the 1st day of June, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp], cause another, not the spouse of [Hupp] to have sexual contact with him; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] * * *.
 COUNT NINE: * * * [O]n or about the 1st day of June, 2006 to on or about the 31st day of December, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] * * *.
 COUNT TEN: * * * [O]n or about the 15th day of May, 2006 to on or about the 30th day of June, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp], cause another, not the spouse of [Hupp], to *Page 10 have sexual contact with him; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] * * *.
 COUNT ELEVEN: * * * [O]n or about the 1st day of June, 2006 to on or about the 31st day of August, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age;
 SPECIFICATION
 * * * [T]he said victim * * * is less than ten years of age; in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT TWELVE: * * * [O]n or about the 1st day of June, 2006 to on or about the 31st day of August, 2006, at Allen County, Ohio, [Hupp] * * * did engage in sexual conduct with another, not the spouse of [Hupp]; said other person being less than thirteen years of age;
 SPECIFICATION
 * * * [T]he said victim * * * is less than ten years of age; in violation of [R.C. 2907.02(A)(1)(b)] * * *.
 COUNT THIRTEEN: * * * [O]n or about the 22nd day of November, 2006 to on or about the 26th day of November, 2006, at Allen County, Ohio, [Hupp] * * * did have sexual contact with another, not the spouse of [Hupp]; said other person being less than thirteen years of age; in violation of [R.C. 2907.05(A)(4)] * * *.
Aug. 16, 2007, Indictment. Thus, the indictment set forth seven different time frames for the alleged offenses. The bill of particulars filed by the State did not narrow down the time frame, but it did provide notice of the specific conduct forming the basis of the charges. *Page 11 
 {¶ 9} The first prong to be addressed is whether a material element of the offense is the time and date. Hupp was charged with multiple counts of gross sexual imposition and rape of children under the age of thirteen. The only effect the date and time have on the offense is to show that the victims were under the age of thirteen at the time of the offense. The specific dates and times of the offenses charged are not material elements of the offenses. In the bill of particulars, the only time requirement is met when the victims' dates of birth were set forth as well as the alleged time frame of the act. State v. Mundy (1994),99 Ohio App.3d 275, 650 N.E.2d 502. Thus, no further identification of the date and time is necessary as an element of the offense.
 {¶ 10} The second prong is whether the State engaged in a full disclosure of the dates and times. The record indicates that the State disclosed the information to the best of their ability. On January 25, 2008, the State filed an amended response to the request for a bill of particulars. This amended bill of particulars narrowed the time range from the original one. C.J. testified that she was only able to narrow the time range as she continued to think about and discuss the incidents. The change in C.J.'s memory as far as the time frame was subject to cross-examination by Hupp. Given the record before this court, there is no indication that the State was not forthcoming with the dates as known to it. *Page 12 
 {¶ 11} Finally, this court must consider whether the broad range of dates prejudicially affected the defendant's ability to present a defense. "Where the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error." State v.Barnecut (1988), 44 Ohio App.3d 149, 542 N.E.2d 353, syllabus. At the outset, this court notes that Hupp did not file a notice of an alibi defense. Hupp alleged instead that the testimony of the victims resulted from fabrication. Hupp argued that the victims were coached by their mother to help in a custody dispute between their parents. Hupp also does not deny that he was alone with the victims at various times during the times given in the bill of particulars. Based upon the record in this case, this court holds that the inexactitude of the dates and times was not prejudicial to Hupp's preparation of a defense. Since Hupp has failed to show how he was prejudiced by the time ranges, the second and third assignments of error are overruled.
 {¶ 12} The fourth assignment of error raises the argument that the trial court erred by denying the motion for an in camera review of the grand jury proceedings to insure that Hupp was not being charged twice for the same offense in violation of the double jeopardy clause of the constitution. *Page 13 
 This Court has previously found that "the details of every instance need not be established in the indictment itself. Rather, it is enough that the bill of particulars provide sufficient detail to connect each charge to a specific incident and provide the defendant with adequate notice of the crimes charged."
Egler, supra at ¶ 23 (citing State v. Van Voorhis, 3d Dist. No. 8-07-23,2008-Ohio-3224, ¶ 41). Hupp alleges that the indictment was so vague that he was denied assurance that the victims were testifying to specific events and not to "typical" instances of abuse. In addition to the indictment, Hupp was given a bill of particulars and an amended bill of particulars. These bills of particulars provided details as to what act formed the basis of the indictment, thus connecting each charge to a specific incident. The bills of particulars were sufficient to protect Hupp from any double jeopardy threat. The fourth assignment of error is overruled.
 {¶ 13} The fifth assignment of error alleges that he was denied a fair trial when the trial court selected talesmen for jurors without use of a jury wheel or automated data processing. Generally, jurors are selected by jury wheel or through an automated data processing list.
 When by reason of challenge or other cause, enough jurors to make up the panel, either of the grand or petit jury, are not present, or if the array is set aside, the sheriff shall summon talesmen until the deficiency is made up.
R.C. 2313.38. *Page 14 
 When it is necessary to summon talesmen, the court, on the motion of either party, shall summon them, and immediately issue a venire for as many persons having the qualifications of a juror as, in the opinion of the court, are necessary, which persons shall appear forthwith, or at such times as fixed by the court. No person known to be in or about the courthouse shall be selected without the consent of both parties.
R.C. 2313.39.
 {¶ 14} In this case, the trial court summoned several jurors to appear for jury selection. The majority of these potential jurors appeared. During jury selection, many jurors were dismissed for various reasons and both the State and Hupp had used three of their four peremptory challenges. The result was that there were not enough remaining jurors to form a panel. The trial court then issued bench warrants for the jurors who failed to appear and issued a talesmen order to the sheriff. Two of the originally summoned jurors appeared on the second day and were seated. The talesmen jurors were then brought in for voir dire. Six of these jurors were subsequently dismissed when it was determined they were served in or about the courthouse and Hupp objected. A second talesmen order was issued. When these jurors appeared, the deputy director of the Allen County Board of Elections testified that all twelve of the potential jurors were qualified to serve. TR. 585. The court noted the following concerning the talesmen jurors.
 The court further would note based upon Court's Exhibit "AA" that in the situation involving the talesmen the defendant has the right to an impartial jury drawn from a cross-section of the *Page 15 community, must be selected without the systematic or intentional exclusion of any cognizable group.
 Twelve (12) were called, that's six (6) men, six (6) women. We have nine (9) white, three (3) black. We have age 22, 51, 36, 69, 53, 51, 65, 57, 49, 22, 45, and 54, which means we have two (2) in the 20's, one (1) in the 30's, four (4) — two (2) in the 40's, five (5) in the 50's, and two (2) in the 60's.
 They live, based upon the record, Court's Exhibit "AA", Bluffton, Northeast part of the county; Lima, in the center; Bath, mere east; Lima, center; Bath, east; American Township, west; Lima, center; Elida, west, Lima, center, and Harrod, far east.
 Their occupations deal with manager of Groves Bear, college grad, funeral director, teacher — Head Start, retired from BP, teacher at Bath, cleaning lady at Elder-Beerman, retired five and a half years from Ford, high school, two (2) year college, retired from Ford, employed at Sears, student, sergeant highway patrol, and housewife.
 Three (3) were served at Rays; two (2) — five (5) at the Lima Mall; three (3) at Walmart, plus the group from yesterday.
 The Court finds that for that reason, again, the Court finds that the talesmen have been drawn and selected and based upon their questions that they filled out without the systematic or intentional exclusion of any cognizable group and is a proper — and is a cross-section of the community.
Tr. 543-44. Thus, the record clearly indicates that the trial court complied with the statutory requirements for selecting talesmen jurors. Additionally, Hupp does not specify how he was prejudiced by the trial court's method. Hupp instead argues that the method of selection used could lead to abuse, but does not claim that it did *Page 16 
so in this case. Without a showing of prejudice, there is no error. The fifth assignment of error is overruled.
 {¶ 15} In the sixth assignment of error, Hupp claims that the trial court denied him the right to confront his accusers with inconsistent prior written statements. "Upon completion of a witness' direct testimony, the court on the motion of the defendant shall conduct the in camera inspection of the witness' written or recorded statement with defense attorney and prosecuting attorney present and participating to determine the existence of inconsistencies." Crim. R. 16(B)(1)(g). This court notes that the mere fact that the pre-trial statement and the trial testimony differ in the amount of details given does not mean that the statements are inconsistent. See State v. Cunningham105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504. The determination whether the trial court properly excluded the statements is left to the sound discretion of the trial court. State v. Hirsch (1998), 129 Ohio App.3d 294,717 N.E.2d 789.
 {¶ 16} At the end of the testimony of each of the victims, Hupp made a motion for review of the prior statements. The trial court then reviewed the statements and permitted Hupp's counsel to review the statements. After the review, the trial court found no inconsistencies and denied the use of the statements during trial. A review of the statements shows that although the trial testimony does not mirror the prior written statements, the differences are not material. The *Page 17 
testimony concerning the underlying acts which formed the basis of the charges was consistent with the prior statements. Therefore, the trial court did not abuse its discretion in finding no inconsistencies in the statements. The sixth assignment of error is overruled.
 {¶ 17} The seventh assignment of error challenges the admission of hearsay evidence and of opinion testimony concerning the veracity of the victims. Hupp claims that the admission of this testimony violates the rules of evidence and the confrontation clause of the U.S. Constitution. Hearsay testimony is a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). This court notes that Hupp does not specify which portion of the testimony he considers to contain hearsay, just the identity of the witness. A review of the record concerning the testimony of the witness at issue does not reveal that he testified to the content of any out of court statements. To the contrary, the State repeatedly stopped him from repeating what was said. Thus, there was no hearsay testimony to be excluded.
 {¶ 18} The second part of the assignment of error is that the trial court erred by allowing the witness to testify that he believed the statements of the victims. An expert witness may not testify as to their opinion of the veracity of the victim because the determination of credibility is for the jury. State v. Boston (1989), *Page 18 46 Ohio St.3d 108, 545 N.E.2d 1220. However, the Ohio Supreme Court has held that if the defendant questions the veracity of the State's witness, the State may present opinion testimony concerning the original witness' reputation for veracity. State v. Schechter (1975),44 Ohio St.2d 188, 339 N.E.2d 654.
 {¶ 19} In this case, the defense repeatedly questioned the veracity of the three victims to establish that they had a reputation for lying. Hupp even introduced an allegation in a custody dispute by the father that the mother had encouraged the victims to lie to him. Hupp then argued that the girls were lying to help their mother in the custody matter. By raising the issue of the veracity of the girls and their motives for lying, Hupp opened the door for the State to present a witness offering an opinion concerning the victims' veracity. The State chose to introduce the testimony of their father. He testified that he repeatedly questioned the girls concerning the allegations against Hupp. He then testified that in his opinion, the girls were telling the truth concerning the allegations. This testimony does go beyond merely offering an opinion on the girls' character traits for veracity and is an error.
 {¶ 20} However, "recent case law states that `Boston does not apply when the child victim actually testifies and is subject to cross-examination.'" State v. Thompson, 5th Dist. No. 06CA28, 2007-Ohio-5419, ¶ 50 (quoting State v. Benjamin, 8th Dist. No. 87364, 2006-Ohio-5330, ¶ 19, citingState v. Fuson (Aug. 11, 1998), *Page 19 
5th Dist. No. 97 CA 000023). See also State v.Curren, 5th Dist. No. 04CA8, 2005-Ohio-4315; State v.Smith, 12th Dist. No. CA2004-02-039, 2005-Ohio-63; In reW.P., 8th Dist. No. 84114, 2004-Ohio-6627; State v.Amankwah, 8th Dist. No. 89937, 2008-Ohio-2191; State v.Djuric, 8th Dist. No. 87745, 2007-Ohio-413; and State v.Schoenberger (Jan. 13, 1998), 5th Dist. No. 89-CA-13. Although having a witness testify that the victim is telling the truth is an error, it is harmless error if the victim testifies and is subject to cross-examination. Thompson, supra at ¶ 51 (citing State v.Morrison, 9th Dist. No. 21687, 2004-Ohio-2669). When the victim testifies, the jury is able to hear the victim's answers, witness her demeanor and judge her credibility completely independent of the other's testimony concerning the veracity of the victim.Amankwah, supra at ¶ 44.
 {¶ 21} In this case, all three victims testified and were subject to cross-examination. The jury had the opportunity to independently determine the credibility of the victims regardless of the testimony of their father. In addition, the trial court properly instructed the jury that it was the sole judge of the facts and the sole determiner of the credibility of the witnesses. Tr. 1300-01. Since the jury did have an opportunity to independently determine the credibility of the victims and was properly instructed, the testimony of their father that he believed their allegations was harmless. The seventh assignment of error is overruled. *Page 20 
 {¶ 22} For the eighth assignment of error, Hupp argues that the admission of a letter allegedly written by S.J. was improperly admitted. Prior consistent statements are admissible to rebut claims of fabrication as long as the declarant testifies and is subject to cross-examination. State v. Williams, 3d Dist. No. 9-07-61,2008-Ohio-3887. The author of the letter testified and was subject to cross-examination. Her veracity was called into question by Hupp. Thus, the letter is admissible as a prior consistent statement.
 {¶ 23} This leaves the only issue being whether the exhibit was properly identified prior to admission. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). Testimony by a non-expert witness who is familiar with the alleged author's handwriting can authenticate a document. Evid. R. 901(B)(2). Here, the grandmother testified that she is familiar with the handwriting of S.J. . Tr. 1069. She testified that she identified the letter as being written by S.J. . Id. In addition, the letter was signed by S.J. . Id. This testimony satisfies the authentication requirement of Evid. R. 901. Thus, the trial court did not err in allowing the admission of the letter and the eighth assignment of error is overruled.
 {¶ 24} In the ninth assignment of error, Hupp challenges the non-service of the subpoenas he issued for a witness and claims the trial court erred by not *Page 21 
compelling a witness to appear. However, a trial court lacks the authority to compel appearance when the subpoena has not been served.State v. Juenger, 12th Dist. No. CA2003-02-049,2004-Ohio-796. The record in this case clearly indicates that service upon the witness failed. Since service was not completed, the trial court had no authority to compel the witness to appear. The ninth assignment of error is overruled.
 {¶ 25} The tenth and eleventh assignments of error claim that the verdicts are not supported by sufficient evidence and are against the manifest weight of the evidence.
 Sufficiency of the evidence is a test of adequacy used to "determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense. * * * In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * *
State v. Alvarado, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶ 23
(citations omitted).
 {¶ 26} The first five counts dealt with acts involving C.J. Count one alleges that Hupp had sexual contact with C.J. and that she was under the age of thirteen at the time of the contact. "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic *Page 22 
region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). C.J. testified that count one occurred in April of 2006, and that she was born in 1994. Thus, C.J. was under the age of thirteen. She testified that Hupp had her rub oil on his penis. She then testified that Hupp put on a condom and then told her to move her hand up and down over the condom, which she did. Viewing this evidence in a light most favorable to the State, it is sufficient to support the conviction.
 {¶ 27} Count two again alleges sexual contact between the defendant and C.J. . Counts three, four and five allege that Hupp engaged in sexual conduct with C.J., with count three containing an allegation of force and all three claiming that the victim was less than thirteen years of age.
 "Sexual conduct" means vaginal intercourse between a male and a female; anal intercourse; fellatio; and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
R.C. 2907.01(A). The allegation of force or threat of force in a situation involving a child and a person in authority over that child can be met "without evidence of express threat of harm or evidence of significant physical restraint." State v. Dye (1998), 82 Ohio St.3d 323,695 N.E.2d 763. Instead the force may be subtle and psychological.State v. Schaim (1992), 65 Ohio St.3d 51, 600 N.E.2d 661. *Page 23 
 {¶ 28} For counts two through five, C.J. testified that they all arose out of one incident which occurred in December of 2006. This date would have made C.J. twelve years of age at the time of the incident. C.J. testified that Hupp, licked her vagina, put his fingers in her vagina, licked her breasts, and then placed his penis inside her vagina. Additionally, C.J. testified that she did not say no or refuse to cooperate because although Hupp had never hurt her, she was unsure what he would do if she resisted. Tr. 738. Given this testimony and viewing it in a light most favorable to the State, the jury could reasonably conclude that Hupp was guilty of the allegations in counts two through five.
 {¶ 29} Counts six through nine involved K.J. The counts claimed that instances of sexual contact with a person younger than 13 years of age, and two instances of sexual conduct with a person younger than 13 years of age. K.J. testified that she was born in 1994. All four of these events occurred sometime between the middle of May until the end of December, 2006. This time frame made K.J. twelve years of age at the time. K.J. first testified that Hupp had her shower with him. Tr. 753. After the shower, Hupp instructed her to lay down on the bed. Hupp then licked her vagina. K.J. then testified that Hupp came up behind her, stuck his hand in her underwear and then inserted his finger into her vagina. Tr. 754-55. Finally, K.J. testified that on a different day after another joint shower, Hupp had her rub lotion all over his body, including his penis. Tr. 757. *Page 24 
Hupp then rubbed lotion all over her, including her vagina, butt and breasts. Id. Viewing this evidence in a light most favorable to the State, a reasonable juror could conclude that Hupp was guilty of counts six through nine.
 {¶ 30} The last victim to testify was S.J. and she testified as to the events forming the basis of counts ten, eleven, twelve, and thirteen of the indictment. Counts ten and thirteen claimed that Hupp engaged in sexual contact with a child under the age of thirteen. Counts eleven and twelve claimed that Hupp engaged in sexual conduct with a child under the age of ten. S.J. testified that she was born in 1997. Sometime between the middle of May and the end of June, 2006, Hupp called her to the house to make money for the pool. Tr. 859. S.J. testified that Hupp had her rub oil all over him. Id. When she said she was done, Hupp pointed to his penis and told her to rub the oil on it as well. Id. S.J. then testified that during the summer of 2006, Hupp again called her to the house to earn money for the pool. Hupp then had S.J. take off her clothes and lay down. Hupp then placed a pillow over her face, rubbed oil over her vagina and breasts. Hupp then dug his fingers into her vagina and licked it. During this time frame, S.J. would have been nine years old. Tr. 855-56. Finally, S.J. testified that around Thanksgiving 2006, Hupp placed his hand on her vaginal area on the outside of her underwear and proceeded to move it around. Tr. 853. Based upon this evidence and viewing it in a light most favorable to the State, a reasonable juror could find Hupp guilty of *Page 25 
counts ten through thirteen. Thus, the evidence is sufficient to support Hupp's conviction and the eleventh assignment of error is overruled.
 {¶ 31} Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. "
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514
(citing Black's Law Dictionary (6 Ed. 1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.
 The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.
State v. Thompson (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456. *Page 26 
 {¶ 32} Here, Hupp claims that the only issue before the jury was one of credibility. Hupp argues that since the girls had a motive to lie, were vague as to dates, and did not always disclose all the details every time questioned, they lacked credibility. Hupp argues that the credibility of the alleged victims was "so low as to not be proof beyond a reasonable doubt for any reasonable juror." Appellate Brief, 34. However, the jury is the ultimate judge of credibility and decides whether to believe all, some, or none of the testimony. The basic testimony of the victims concerning what happened was consistent. Although the victims were somewhat vague on dates, this did not change their testimony as to the actual event. Given the testimony before it, a reasonable juror could conclude that the victims were credible and that Hupp was guilty. In this case, the evidence does not weigh heavily against conviction and the verdict is thus not against the manifest weight of the evidence. The tenth assignment of error is overruled.
 {¶ 33} The final assignment of error alleges that the cumulative effect of the errors deprived Hupp of a fair trial. "[A] conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995),74 Ohio St.3d 49, 64, 656 N.E.2d 623. The failure to establish multiple instances of harmless error makes the doctrine of cumulative error inapplicable.State v. Hohvart, 7th *Page 27 
Dist. No. 06 MA 43, 2007-Ohio-5349, ¶ 37. Since no error, harmless or otherwise, has been found in this case, there is no cumulative effect of the errors. The twelfth assignment of error is overruled.
 {¶ 34} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error, the judgment of the Court of Common Pleas of Allen County is affirmed.
Judgment Affirmed
 PRESTON, P.J., concurs.