THE STATE OF OHIO, APPELLEE, *v.* SCHECHTER, APPELLANT.

(No. 74-1093—Decided December 24, 1975.)

190

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Patrick G. Lazzaro,* for appellee.

*McDonald, Hopkins & Hardy Co., L. P. A.,* and *Mr. John T. Mulligan,* for appellant.

CORRIGAN, J.

*I.*

Counsel for appellant earnestly urges a reversal of the decision of the Court of Appeals and remand for a new trial solely on the application of the rule of law established in *Webb* v. *State, supra* (29 Ohio St. 351). It is a bifurcated prayer tined with two propositions of law, the first of which asserts:

"The rule of law in *Webb* v. *State,* 29 Ohio St. 351 (1876) permits the introduction of opinion testimony as to the reputation of the prosecution's witness for truth and veracity only where there has been an 'inquiry' involving the introduction of testimony and other evidence."

Such reliance on *Webb* under the facts reflected in the record in this case can at best be characterized as tenuous, if not fatuous. Of course, there has been an inquiry here as to who murdered Linda Kyman, involving the introduction of testimony and evidence. That was the purpose of the trial below. And, as this court held in paragraph four of the syllabus in *Webb,* almost a century ago:

"Evidence cannot be given to prove an infamous crime against a witness, of which he has not been convicted, for the purpose of impeaching his credit; yet, where the question as to whether the witness is guilty of such crimes becomes the legitimate subject of inquiry on the trial, his

reputation for truth may be proved, to rebut the imputation of guilt which the evidence makes against him.''

Appellant's first proposition of law is rejected.

## II.

The second proposition of law advanced by appellant declares:

''Once it has been determined that an 'inquiry' has been conducted sufficient to justify the application of the rule in *Webb* v. *State,* the trial judge must exercise discretion in determining whether to permit certain persons to testify as to this collateral issue. Judges should not be permitted to testify in this situation if their testimony is likely to have an unfair and prejudicial effect.''

Appellant presents no precedent for the proposition he urges this court to accept. We are unable to find any statute or case law applicable to this fact situation. There was likewise no canon of judicial ethics in force in June 1973, at the time of this trial, which prohibited a judge from testifying as a character witness.

Effective December 20, 1973, however, this court adopted a new Code of Judicial Conduct governing the judiciary of Ohio. Canon 2B thereof provides, in part, that ''[a] judge * * * should not testify voluntarily as a character witness.'' In the commentary on that canon, it is stated:

''The testimony of a judge as a character witness injects the prestige of his office into the proceeding in which he testifies and may be misunderstood to be an official testimonial. This canon, however, does not afford him a privilege against testifying in response to an official summons.''

We are unable to conclude that permitting the two judges of the Court of Common Pleas to testify as character witnesses, under the rule of *Webb* v. *State, supra,* for the witness, Helen Kyman, was illegal, unethical, unfair or prejudicially erroneous, even though it may have been unwise.

We do not accept the second proposition of law.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CELEBREZZE and P. BROWN, JJ., concur.

O'NEILL, C. J., STERN and W. BROWN, JJ., concur in the judgment.

STERN, J., concurring. It is a basic rule of evidence that witnesses may not be called to testify in support of the character or reputation for truth of another witness. Such testimony is collateral to the actual issues at bar and is unnecessary, for every witness is, in the first instance, presumed to be truthful. 4 Wigmore on Evidence 233-35, Section 1104. Further, the admission of such testimony would tend to turn trials into oath-taking contests, as in the early common law trials by compurgation, in which cases were decided by the number of oath helpers on each side. Our trials are of facts, not of the worth of oaths.

There are exceptions to that rule of evidence consistent with its purpose. The defendant in a criminal case may introduce witnesses to show his good character, for his character is considered to be directly in issue. A witness whose character has been directly attacked by evidence of particular misconduct may also be rehabilitated by evidence of good character. It is a matter of fairness to admit evidence relevant to the issue of character, when that issue is raised, and, more importantly, the admission of such evidence gives some protection against the trier of fact being swayed by the implication that there may well be some substance to attacks upon a witness's character, when such attacks are answered only by the witness himself. Wigmore on Evidence, *supra,* at page 236.

But the exception does not swallow the rule, and the important issue in determining whether the exception should apply is whether a sufficient direct inquiry has been made into the character of the witness. In *Webb* v. *State* (1876),

29 Ohio St. 351, the issue was whether the defendant had forged a contract. The defendant testified that he received the contract from a prosecution witness not knowing it was forged. The defense then called witnesses who testified that the same prosecution witness had made statements (including statements at a previous trial) inconsistent with his testimony. In effect, the witness was impeached by evidence of perjury and of attempting to convict an innocent man of that witness's own crime. Very clearly, an issue was raised in that case, by the defense's evidence, as to whether the witness had committed an infamous crime, and the court properly held that witnesses might be called to rebut the imputation thus directly cast upon that witness.

In the present case, the basis for any inquiry into the character or reputation of the witness, Helen Kyman, was that, upon *voir dire* and opening statement, defense counsel indicated that there was evidence that Mrs. Kyman had shot her daughter, without suggesting whether that shooting was intentional; that the defendant stated, in a tape-recorded interview introduced in evidence by the prosecution, that Mrs. Kyman, and not he, had shot the gun; and that in the course of a lengthy cross-examination the defense asked questions seeking to discredit Mrs. Kyman's account, including one question as to whether she had in fact fired the gun, which she denied. No witnesses were called to testify as to her general character, as to any past instances of misconduct, or as to any statement or acts by her which contradicted her testimony. The sole issue was whether her account of the death of her daughter was believable beyond a reasonable doubt. That question was fully explored on cross-examination and by comparison of her testimony with the other evidence in the case. The defense contended that her testimony was inconsistent with the other evidence, or was at least doubtful. That the defense may do, without being considered to have made a direct attack upon the character of the witness, for the attack is directly upon the facts alleged to form the substance of the charge against the defendant, although it, of

course, reflects upon the veracity of any witness to those facts, and, in this case, upon the possibility of blame attaching to the witness. Cf. *Reed* v. *State* (1918), 98 Ohio St. 279, 120 N. E. 701.

Mrs. Kyman had full opportunity to explain or deny the inconsistencies asserted by the defense, both upon direct and cross-examination, and the defense did not give evidence of any other facts which would degrade or discredit her. In such a case, it appears that the prosecution's character witnesses acted essentially as oath helpers, testifying, in effect, that the charges were probably true, not because they possessed any knowledge of them, but because someone they knew had so sworn. Such a practice shifts the focus of inquiry away from weighing the evidence in the case, toward weighing instead the public esteem of the defendant and the prosecuting witnesses. The fact that the witnesses in this case were judges serves to reinforce the prejudice of such procedure. We do, of course, allow the testimony of character witnesses for the defendant; but that right does not imply that, out of some sense of sporting justice, a prosecution witness's version of disputed facts may be propped up by the testimony of those who believe her in other matters. The testimony of such character witnesses should be limited to rebuttal of direct attacks upon the character of the witness, and not extended to rebuttal of attacks which are fundamentally upon a witness's version of the facts at issue.

I concur in the judgment of the court because the evidence of the defendant's guilt was so overwhelming and the case so fully and competently argued at trial that the error in allowing the testimony of the prosecution's character witnesses was, I believe, harmless. Crim. R. 33(E); see *Chapman* v. *California* (1967), 386 U. S. 18.

O'NEILL, C. J., and W. BROWN, J., concur in the foregoing concurring opinion.