JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Michael Amankwah, appeals from a judgment of conviction after a jury found him guilty of committing one count of rape and one count of kidnapping. A third count, gross sexual imposition, was dismissed pursuant to Crim.R. 29 at the close of the state's case. The rape indictment contained a sexually violent predator specification that was tried to the bench and of which appellant was found not guilty.
 {¶ 2} Appellant raises four assignments of error for review, complaining that: (1) there was insufficient evidence to sustain the convictions, (2) the conviction is against the manifest weight of the evidence, (3) the state engaged in improper questioning of one of its witnesses, and (4) counsel performed ineffectively by failing to object to the improper questioning. We find no error and affirm appellant's conviction.
 {¶ 3} The victim, J.L., was 13 years old at the time of the offense. From the testimony of J.L., her mother, and her grandmother, the following facts emerged. Appellant is an uncle of J.L.'s younger sister. Although appellant is not her uncle, J.L. developed a close relationship with him and referred to him as "Uncle Mikey." He would spend time with her and take her places like the mall, and sometimes picked her up from school. He would tease her and sometimes tickle her and wrestle with her. *Page 4 
 {¶ 4} The offense occurred in early May 2006 while J.L.'s mother was out of town and J.L. and her sister were staying with their grandmother. Appellant called the mother and got permission to do his laundry at her house. J.L.'s grandmother gave him the key and asked him to download some songs from the computer to her iPod while he was there.
 {¶ 5} J.L. went with appellant to the house. She said that while appellant was on the computer she sat on the couch watching television. At some point she called her grandmother to tell her the iPod was not working. Her grandmother told her to come home.
 {¶ 6} She said that after this call appellant began teasing her. He lifted her off the couch and put her on the floor and tickled her. He tried to kiss her. She was surprised by this and told him to move. She told him he was "too old to be messing with me like that." He then said to her : "Don't nobody have to know," and, "You don't want me to go to jail, do you?" When he tried to kiss her again, J.L. tried to push him off her. She said she hit him and tried to get away. He held her hands together and pulled down her pants. She said he held her down with his knees on her thighs, wet his fingers with his mouth and rubbed his penis, and then had intercourse with her. When she managed to get her hand free, she hit him in the face. Appellant got up off her and went in the bathroom. After appellant came out, she used the bathroom and saw a little bit of blood on the tissue. *Page 5 
 {¶ 7} J.L. said she did not tell anyone about the attack because she did not want appellant to go to jail. She continued with her regular routine and went to school the next day and participated in a talent show for which she had spent weeks preparing. She went skating as usual on Friday night.
 {¶ 8} J.L.'s grandmother was bothered by the amount of time J.L. and appellant had spent at the house. She had J.L.'s mother bring her over after skating and the grandmother asked J.L. if something had happened between her and appellant at the house that night. At first, J.L. denied anything had happened. After further prodding, she told her grandmother that they were just wrestling. Still bothered, the grandmother spoke to J.L.'s mother on Saturday and told her to speak to J.L. about that night. After her mother questioned her about what happened at the house, J.L. disclosed that appellant had raped her. Her mother immediately took her to the police station and then to the hospital. J.L. was examined at the hospital and a rape kit prepared, even though three days had passed since the rape.
 {¶ 9} The state also presented testimony from the nurse who examined J.L. at the hospital, two forensic scientists employed at the Bureau of Criminal Identification (BCI) laboratory, and a Cleveland police officer with the Sex Crimes and Child Abuse Unit.
 {¶ 10} Appellant called two witnesses: his sister Joy Patterson, and his fiancé Rashawnda Evans. Ms. Patterson testified that appellant and J.L. had a father/daughter or uncle/niece type of relationship and that she had observed *Page 6 
appellant discipline J.L. She also testified that J.L.'s mother had expressed feelings toward appellant and that she had told J.L.'s mother that this was inappropriate considering that she had previously had a child with appellant's older brother. Ms. Evans testified that appellant was living with her during the time in question. She said she was often with appellant when he did things with J.L., including when they went to the mall and to Six Flags. She said that J.L.'s mother did not like her. She testified that on May 3 she spoke to appellant on the phone for 40 minutes while he was at J.L.'s house with J.L. She said that J.L. called her on May 4 and asked her to take her skating the following day.
 I {¶ 11} Appellant asserts first that there is insufficient evidence to justify the convictions on the rape and kidnapping charges. He argues that there is absolutely no evidence, physical or otherwise, to support J.L.'s story. He notes that J.L. failed to call for help after the alleged incident even though she had her cell phone with her. He also notes that she failed to tell anyone at home that something had happened that night, and went forward with her regular routine by participating in the talent show on Thursday and going skating on Friday. He maintains that the facts and circumstances indicate that no rape or kidnapping occurred, and therefore the convictions should be reversed and vacated.
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial *Page 7 
to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} Appellant was charged with rape and kidnapping. The elements of the rape offense are found at R.C. 2907.02, which provides:
 {¶ 14} "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 15} The elements of kidnapping are found at R.C. 2905.01, which provides in pertinent part:
 {¶ 16} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 17} "* * *
 {¶ 18} "(2) To facilitate the commission of any felony or flight thereafter.
 {¶ 19} "* * * *Page 8 
 {¶ 20} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will."
 {¶ 21} There was sufficient evidence to submit the rape and kidnapping counts to the jury. J.L. testified that appellant held her down on the floor and had intercourse with her. She testified that he held both of her hands and used his knees on her thighs to hold her down. She testified that she tried to move his hands and push him off of her; that when she got one hand free, she hit him. The nurse who examined J.L. testified that J.L. flinched in pain during the vaginal examination. While there was no semen or DNA evidence collected during J.L.'s physical examination, the nurse and forensic scientists testified that this was not unusual considering the time between the alleged incident and the examination.
 {¶ 22} The first assignment of error is overruled.
 II {¶ 23} Appellant next argues that his convictions for rape and kidnapping are against the manifest weight of the evidence. He notes that not only were the victim's allegations uncorroborated by physical evidence, but the physical examination found the DNA of an unknown male in J.L.'s ear. He also notes that J.L. told no one about the incident, and when first questioned by her grandmother, denied that anything happened except that appellant wrestled with her. Appellant stresses that J.L. went on with her normal daily routine, and danced and smiled through the talent show. *Page 9 
 {¶ 24} When reviewing a claim that a verdict is against the manifest weight of the evidence, we weigh all the reasonable inferences, consider the credibility of witnesses and, in considering conflicts in the evidence, determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964),176 Ohio St. 61, 67.
 {¶ 25} The jury heard J.L.'s testimony and the defense thoroughly cross-examined her. They heard her testify that appellant liked to tease and wrestle with her. J.L.'s grandmother testified that this type of behavior did not sit well with her. Appellant's sister testified that she observed him and J.L. wrestling on prior occasions and felt it was inappropriate behavior between a grown man and a 13-year-old girl. The jury also heard J.L. explain that she did not tell anyone because she did not want her "Uncle Mikey" to go to jail. The forensic scientists explained to the jury that the unknown male DNA found in J.L.'s ear did not match appellant's and that it was impossible to determine when or how the DNA was deposited in her ear. *Page 10 
 {¶ 26} It was within the jury's province to weigh the evidence and the credibility of the witnesses. After reviewing the testimony, we cannot say that the jury clearly lost its way. There was not such a "manifest miscarriage of justice" that the convictions for rape and kidnapping must be reversed and a new trial ordered. Appellant's second assignment of error is overruled.
 III {¶ 27} For his third assigned error, appellant asserts that the prosecutor improperly questioned J.L.'s mother regarding J.L.'s credibility and truthfulness. He argues that the state's conduct prejudiced his case and denied him the opportunity for a fair trial.
 {¶ 28} Appellant argues that the court allowed the victim's mother to testify to her daughter's credibility in violation of State v.Boston (1986), 46 Ohio St.3d 108. In Boston, the Ohio Supreme Court addressed the issue of whether an expert witness may testify to the veracity of a child witness. The court held at the syllabus, "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." In that case, the child victim was found to be incompetent to testify as a witness, and the trial court admitted into evidence statements the child made to her mother, the treating pediatrician, and her counselor. The doctor and the counselor testified to the effect that the child was telling the truth. *Page 11 
 {¶ 29} After examining the Rules of Evidence, the Ohio Supreme Court held that "we have little difficulty in finding that the admission of this testimony was not only improper — it was egregious, prejudicial and constitutes reversible error." Id. at 128. The supreme court further explained that, "`[i]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.'" Id. at 129, quotingState v. Eastham (1988), 39 Ohio St.3d 307, 312. The court found the error in admitting the testimony to be more than harmless error and reversed and remanded the matter for a new trial. Id.
 {¶ 30} Our review of the record shows appellant failed to object to the contested questions and thus waived all but plain error. State v.Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, _169, citing State v.Slagle (1992) 65 Ohio St.3d 597, 604. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection.State v. Marinello, Cuyahoga App. Nos. 86028 and 86113, 2006-Ohio-282, _40. An error is not prejudicial for the purposes of plain error review unless, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1987), 53 Ohio St.2d 91, paragraph two of the syllabus. *Page 12 
 {¶ 31} In this case, the challenged testimony was in response to appellant's cross-examination of the witness concerning her beliefs regarding her daughter's allegations. Appellant's counsel had questioned the victim's mother extensively about how she had relied upon appellant and her belief that appellant was dependable and trustworthy. He established that she trusted appellant with her children and relied upon him to pick up and watch the kids and to fix her car. He then asked her:
 {¶ 32} "Q. Trustworthy. Other than what your daughter said, you still would consider him trustworthy, correct?
 {¶ 33} "* * *
 {¶ 34} "Q. Because, once again, you had no reason in your experience, in your history with him, to believe that he would ever do anything like this, correct?
 {¶ 35} "* * *
 {¶ 36} "Q. You didn't trust what your daughter was — what your daughter had communicated or hadn't communicated?"
 {¶ 37} It was in response to this line of questioning challenging the victim's trustworthiness that the state asked on redirect:
 {¶ 38} "Q. After your daughter told you that the Defendant raped her, did you have any desire to hear his side of the story?
 {¶ 39} "A. No. *Page 13 
 {¶ 40} "Q. Did you have any reason not to believe her?
 {¶ 41} "A. No.
 {¶ 42} "Q. Can you think of any motive or reason whatsoever that your daughter would falsely make this statement?
 {¶ 43} "A. No."
 {¶ 44} We find under the circumstances that appellant invited this line of questioning. However, even assuming arguendo that appellant did not open the door to this line of questioning, and that the testimony was improper, we must still determine whether the admission of the testimony was harmless error. After a review of appellant's arguments and the applicable rule, we do not find that the trial court committed plain error. Furthermore, we have stated that Boston does not apply when the child victim actually testifies and is subjected to cross-examination. State v. Djuric, Cuyahoga App. No. 87745,2007-Ohio-413; State v. Benjamin, Cuyahoga App. No. 87364,2006-Ohio-5330. In this case, the child victim testified and was subject to cross-examination. The jury was able to hear her answers, witness her demeanor, and judge her credibility independent of her mother's testimony.
 {¶ 45} Appellant's third assignment of error is overruled.
 IV {¶ 46} For his final assignment of error, appellant asserts that he was denied effective assistance of counsel as guaranteed by the Ohio and *Page 14 
United States Constitutions. He argues that his trial counsel's actions in failing to object to the state's questioning of the mother regarding the victim's trustworthiness deprived him of a fair trial and fell below all standards of common criminal defense practice. We disagree.
 {¶ 47} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Bradley (1989),42 Ohio St.3d 136, 141-142, citing Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra, at 143.
 {¶ 48} As stated above, we do not find that the admission of the challenged testimony so prejudiced appellant as to constitute plain error and require reversal. Therefore, appellant has not satisfied his burden under the second prong of the Strickland test. Moreover, a review of the record shows that appellant's trial counsel actively defended appellant throughout the trial. *Page 15 
 {¶ 49} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Appellant has failed to rebut this presumption. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and COLLEEN CONWAY COONEY, J., CONCUR. *Page 1