[Cite as *State v. Skidmore*, 2010-Ohio-2846.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 08 MA 165 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHAEL SKIDMORE | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 2007-CR-1506

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. Lynn Maro
7081 West Boulevard
Youngstown, Ohio  44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  June 18, 2010

WAITE, J.

**{¶1}** Appellant, Michael Skidmore, appeals his jury convictions in the Mahoning County Court of Common Pleas on one count of rape, in violation of R.C. 2907.02(A)(1)(b)(B) (victim under the age of thirteen/threat of force), a felony of the first degree, three counts of rape, in violation of R.C. 2907.02(A)(2)(B) (force or threat of force), felonies of the first degree, one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4)(B) (victim under the age of thirteen), a felony of the third degree, and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1)(B), felonies of the fourth degree (force or threat of force). Appellant was acquitted of two other counts of rape, and two other counts of gross sexual imposition.

**{¶2}** Appellant's victim in this case was his step-daughter, H.R. Appellant was charged with one count of rape and one count of gross sexual imposition for each of the years between H.R.'s tenth and sixteenth birthdays. Appellant was acquitted of the rape and gross sexual imposition charges allegedly incurred when H.R. was ten and eleven years of age.

**{¶3}** H.R. testified at trial that Appellant moved into her home when she was seven years old, but she had known him from the age of two. (Tr., pp. 242-243.) H.R. testified that Appellant began comparing her body to her mother's body when she was ten years old, but that she did not believe that he ever touched her inappropriately when she was ten. (Tr., p. 246.)

**{¶4}** According to H.R.'s testimony, Appellant began touching her breasts and buttocks "over top [of her] clothes" by the time she was in the fifth or sixth grade.

(Tr., p. 246.) He also began walking into the bathroom while she was taking a shower, as well as touching her under her clothes. She testified that he began touching her under her clothes when she was "around" ten or eleven. (Tr., p. 247.) At twelve, H.R. performed oral sex on Appellant, which occurred more than 50 times by her sixteenth birthday. (Tr., pp. 247, 249.) Appellant also performed oral sex on H.R. (Tr., p. 249.) At thirteen, he began penetrating her vaginally and anally with his fingers. (Tr., pp. 248-249.)

{¶5} H.R. testified that Appellant would coerce her into performing sex acts by telling her that she "owe[d]" him. (Tr., p. 251.) She interpreted the statement, "you owe me," which he said more than once a week, to mean that she would have to perform a sex act in exchange for "getting something materialistic from the store or going somewhere." (Tr., p. 251.) H.R. further testified that her mother typically handed down the punishment for bad behavior, and that Appellant would get the punishments lifted in exchange for sex acts. (Tr., p. 255.)

{¶6} The abuse continued with regularity until H.R. began dating Elmer Gonzalez when she was fifteen. (Tr., p. 250.) She testified that the abuse "faded out" because she was never home. According to her testimony, H.R. performed sex acts with Appellant monthly after she started dating Gonzalez, and that she performed approximately two sex acts with Appellant during the summer following her freshman year of high school. (Tr., p. 252.)

{¶7} H.R. realized that she was the victim of sexual abuse when she watched an episode of "The Oprah Winfrey Show" that focused on child molestation.

She testified that guests on the show described sex acts in which she had engaged with Appellant. (Tr., p. 254.) H.R. conceded that she had a strained relationship with her mother, and felt much closer to Appellant, and that she was afraid to tell her mother about the abuse. (Tr., pp. 254-255.)

**{¶8}** H.R. told Gonzalez about the molestation in December of 2006, and he encouraged H.R. to tell her mother. (Tr., p. 256.) Although H.R. was reluctant to tell her mother, she finally divulged the information in April of 2007. H.R. and her mother were watching a prime time news program about child molestation, and H.R.'s mother asked if H.R. would confide in her if H.R. was being abused. H.R. dissolved into tears and disclosed the abuse. (Tr., p. 257.)

**{¶9}** In addition to her testimony regarding the sex acts, H.R. testified that Appellant took her shopping when she was thirteen and bought her a bikini and "G-string underwear." (Tr., pp. 259-260.) On one occasion, when H.R. was thirteen or fourteen, Appellant plied her with alcohol, and H.R. woke up the following day naked in her bed with no recollection of the events of the previous evening. Appellant was naked beside her. (Tr., pp. 262-263.) H.R. identified a scar near Appellant's groin in order to prove that she had seen him naked.

**{¶10}** H.R. characterized Appellant as a jealous man who attempted to prevent her from seeing Gonzalez. (Tr., p. 267.) After her allegations were revealed to Appellant, she testified that he told her that he loved her, and that he would leave her mother and then they could run away together if she would recant her story. (Tr., p. 270.) However, she also testified that Appellant encouraged her to have sex with

Gonzalez, and he even suggested certain sexual positions that they should try. (Tr., p. 273.)

{¶11} Appellant's trial counsel argued that H.R.'s accusations were false, and characterized the accusations as retribution for a series of punishments that she had received in the months preceding the accusations. Her cellular telephone was taken away at some point in January or February of 2007, and it was never returned. (Tr., pp. 310-311.) She was also grounded for skipping school with Gonzalez, who was attending Youngstown State University during her sophomore year of high school. (Tr., p. 291.)

{¶12} H.R. conceded on cross-examination that she was punished for misbehavior, and that she was not permitted to see Gonzalez during the months preceding the accusations. (Tr., p. 292.) She was also punished for meeting Gonzalez, without permission, when she took her younger brother to the park. (Tr., pp. 291, 317.) Appellant's trial counsel argued that once she had falsely accused Appellant, H.R., an honor student, was forced to perpetuate the lie because she risked humiliation and scorn if she revealed the truth.

{¶13} On cross-examination, Appellant's trial counsel pointed out that H.R., who broke down a few times during her direct testimony, was unemotional during the videotaped statement she provided to the detective assigned to her case. (Tr., p. 283.) Appellant's trial counsel also underscored the fact that H.R. did not include her testimony regarding the night Appellant gave her alcohol in her statement to police, nor did she tell them that he purchased inappropriate clothing for her. (Tr., p. 301.)

{¶14} H.R. conceded on cross-examination that she could not prove that the bathing suit and underwear, displayed to the jury, were purchased by Appellant. (Tr., p. 287.) She also conceded that Appellant had surgery on his groin area, and that it was reasonable to assume that the surgery had left a scar, but argued that she was able to identify the precise location of the scar. (Tr., p. 298.)

{¶15} Because H.R. admitted that she was sexually active with Gonzalez when she divulged the sexual abuse, no medical tests were conducted to corroborate her story. In addition to H.R., the state elicited testimony from three other witnesses: Gonzalez, Renee Mayberry, a case worker in the abuse unit of Mahoning County Children Services Board ("MCCSB"), and Dr. Paul McPherson, a physician and a specialist in the field of child abuse.

{¶16} In his first assignment of error, Appellant contends that the trial court erred in admitting the testimony of Gonzalez and McPherson, because their testimony served no other purpose than to bolster H.R.'s credibility. Gonzalez, the first person that H.R. told about the abuse, was asked by the state if he had ever known H.R. to lie and Gonzalez responded, "[n]o." (Trial Tr., p. 339.) When he was asked whether he thought that H.R. had manufactured the story, Gonzalez answered, "[a]bsolutely not." (Tr., p. 338.) Gonzalez testified that he believed H.R.'s story based upon her behavior when she accused Appellant of molestation.

{¶17} McPherson testified that evidence of penetration is not necessarily present in all victims of sexual abuse, and that victims react differently when telling their stories. Appellant argues that McPherson's testimony was inadmissible in its

entirety because McPherson never interviewed nor examined H.R., and because McPherson's testimony was within the knowledge or experience possessed by lay persons.

{¶18} In his third assignment of error, Appellant asserts that the gross sexual imposition charges in counts seven through nine failed to state an offense because in each of those counts an essential element of the crime was omitted from the indictment. Because Appellant was acquitted of the crimes alleged in counts seven and eight, the third assignment of error applies only to count nine.

{¶19} In his second and fourth assignments of error, Appellant argues that he was denied a fair trial because of prosecutorial misconduct. Appellant contends that the state referred to him as a "child molester" in both its opening and closing arguments, and shifted the burden of proof in its closing argument, when the state speculated that H.R.'s story must have been consistently told because his trial counsel would have raised any inconsistent statements during his cross-examination. In addition, Appellant contends that he was denied effective assistance of counsel because his trial counsel failed to object to the prosecutor's comments.

{¶20} In his fifth assignment of error, Appellant argues that his convictions are against the manifest weight of the evidence. For the following reasons, Appellant's assignments of error are overruled and his convictions are affirmed.

<u>Assignment of Error No. 1:</u>

**{¶21}** "It was An Abuse of Discretion for The Trial Court to Permit Testimony Offered Solely to bolster the credibility of the complaining witness thereby denying Appellant's Right to Due Process Guaranteed by U.S. CONST., art. I, §16."

**{¶22}** Appellant contends that McPherson's testimony in its entirety and Gonzalez's testimony to the extent that he stated that H.R. did not lie should have been excluded. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. We reverse a trial court's ruling regarding the admission or exclusion of evidence only upon a showing that the trial court abused its discretion. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶23}** Further, we must disregard any error which does not affect an appellant's substantial rights since any such error is harmless. Crim.R. 52(A). In determining whether an error in the admission of evidence was harmless, a reviewing court must find that there is no reasonable possibility that the error contributed to the defendant's conviction. *State v. Sorrels* (1991), 71 Ohio App.3d 162, 165, 593 N.E.2d 313.

**{¶24}** Lay witness opinion testimony is "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Evid.R. 701. Opinion testimony is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶25} "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but * * * the evidence may refer only to character for truthfulness or untruthfulness * * *." Evid.R. 608(A). The Ohio Supreme Court has held that if the defendant questions the veracity of the state's witness, the state may present opinion testimony concerning the original witness' reputation for veracity. *State v. Schechter* (1975), 44 Ohio St.2d 188, 339 N.E.2d 654.

{¶26} Appellate courts have historically declined to reverse convictions based upon improper bolstering testimony where the victim testifies and is subject to cross-examination, the state introduces substantial medical evidence of sexual abuse, and the testimony in question is cumulative to other evidence. *State v. Kincaid* (October 18, 1995), 9th Dist. Nos. 94CA005942 and 92CA005945, at 6; *State v. Palmer* (Feb. 8, 1995), 9th Dist. No. 2323-M, at 19.

{¶27} More recently, appellate courts have limited that part of the holdings in *Kincaid* and *Palmer* that require additional medical evidence to cases involving small children. In other words, while medical evidence is required with victims of a tender age, bolstering testimony has been considered harmless error where the victims are in their teens and subject to cross-examination. *State v. Thompson*, 4th Dist. No. 06CA28, 2007-Ohio-5419; *State v. Hupp*, 3d Dist. No. 1-08-21, 2009-Ohio-1912, ¶20; *State v. Morrison*, 9th Dist. No. 21687, 2004-Ohio-2669, *State v. Amankwah*, 8th Dist. No. 89937, 2008-Ohio-2191, ¶44.

**{¶28}** In *Amankwah*, the victim's mother testified that she believed her daughter's testimony. The Eighth District Court of Appeals recognized that, when the victim testifies, "[t]he jury [is] able to hear [the victim's] answers, witness her demeanor, and judge her credibility independent of her mother's testimony." Id. at ¶44. The same is true in the case sub judice.

**{¶29}** A review of the record before us reveals that it was obvious from the testimony of Gonzalez that he believed H.R. was telling the truth. H.R. and Gonzalez both testified that H.R. told Gonzalez about the molestation and that Gonzalez then encouraged H.R. to tell her mother. There is no question based upon the foregoing testimony that Gonzalez believed H.R.'s story. Therefore, to the extent that it may have been error to ask Gonzalez about H.R.'s truthfulness, the trial court committed harmless error in admitting Gonzalez's testimony, at best.

**{¶30}** Turning to McPherson's testimony, Evid.R. 702 provides in relevant part that "[a] witness may testify as an expert if all of the following apply:

**{¶31}** "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

**{¶32}** "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

**{¶33}** "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶34} Evid.R. 703 reads, in its entirety, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶35} In *State v. Boston* (1989), 46 Ohio St.3d 108, syllabus, the Supreme Court of Ohio held that, "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." In *Boston*, the child victim did not testify. In *State v. Stowers* (1998), 81 Ohio St.3d 260, 690 N.E.2d 881, the Court clarified its earlier holding stating that *Boston* "does not proscribe testimony which is additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis in original.) Id. at 263. The expert testimony in *Stowers* included an explanation of behaviors often seen in children that have been sexually assaulted including recantation of accusations and delayed disclosure. Id.

{¶36} Several Ohio appellate courts have concluded that *Boston* does not apply when the child victim actually testifies and is subject to cross-examination. See *Hupp*, supra at ¶20 (quoting *State v. Thompson*, 5th Dist. No. 06CA28, 2007-Ohio-5419); *Amankwah*, supra; *Smith*, supra.

{¶37} McPherson, a pediatrician and specialist in the area of child abuse, testified that it is common for there to be no medical evidence of penetration in a victim of sexual abuse. (Tr., p. 374.) He further testified that victims do not necessarily report the abuse immediately after it occurs for a number of reasons, including threats by the abuser, embarrassment, and a lack of awareness that they

are victims of abuse. (Tr., p. 376.) According to McPherson, there is no typical demeanor when a victim of abuse recounts his or her story and that not all victims become emotional. (Tr., pp. 378-380.) McPherson conceded on cross-examination that his only knowledge of the facts of the case was based upon his discussions with the prosecutor. (Tr., p. 382.)

**{¶38}** We recently rejected virtually identical arguments to those asserted by Appellant regarding the nature and effect of McPherson's testimony in *State v. Kaufmann*, 7th Dist. No. 08-MA-57, 2010-Ohio-1536. In that case, McPherson provided the exact same testimony about delayed disclosure by victims and the lack of physical evidence of sexual abuse in some cases. As in the case sub judice, McPherson did not examine the victims in *Kaufmann*, nor did he directly comment on the credibility of their testimony at trial. Id. at ¶123.

**{¶39}** We recognized that post-*Stowers* caselaw permits expert testimony that bolsters victim testimony. Id. at ¶124. We likewise acknowledged that McPherson's testimony, which Kaufmann's counsel characterized as "so general that it did not make the existence of any material fact in the case more or less probable," was relevant, as it explained "common patterns of disclosure of child sex abuse victims." Id. at ¶126. In response to Kaufmann's argument that McPherson's testimony offered no specialized knowledge outside the realm of the common knowledge of the jury, we relied on Ohio caselaw establishing that "the average fact-finder may require assistance in understanding the 'behavioral characteristics of minor victims of sexual abuse.' " Id. at ¶127-128 (internal citations omitted).

**{¶40}** Finally, we rejected Kaufmann's assertion that McPherson's testimony was inadmissible because he had no firsthand knowledge about the victims. We stated that, "Evid.R. 703, as it applies to this case, does require that McPherson testify only about facts that he has perceived. However, it does not require that he testify to facts specific to the case." Id. at ¶130.

**{¶41}** Based on our recent *Kaufmann* decision on this issue, Appellant's first assignment of error is overruled. Because Appellant relies on the prosecutorial misconduct he alleges in his second assignment of error as the basis for his ineffective assistance of counsel claim in his fourth assignment of error, we will discuss these assignments together.

<u>Assignment of Error No. 2:</u>

**{¶42}** "Appellant Was Denied Due Process of Law and a Fair Trial by Reason of Improper Prosecutorial Argument. U.S. CONST., amend. XIV, OHIO CONST., art. I, §10."

<u>Assignment of Error No. 4:</u>

**{¶43}** "Appellant's Convictions and Sentences Are in Violation of the State and Federal Constitutions Because Appellant Was Denied the Effective Assistance of Counsel When Counsel Failed to object to prejudicial arguments. U.S. CONST., amend. VI and XIV; Ohio CONST., art. I, §§1, 10 and 16."

**{¶44}** The standard of review for prosecutorial misconduct is whether the actions by the prosecution were improper, and, if so, whether they prejudiced Appellant's substantial rights. *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739

N.E.2d 749. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293.

**{¶45}** To prevail on a claim of ineffective assistance of counsel, Appellant must show not only that counsel's performance was deficient, but must also show the resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 687-688, 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶46}** Appellant contends that the state committed prejudicial misconduct by stating during closing argument that H.R. consistently told the same story about the abuse, despite the fact that the state did not call her mother, a representative of MCCSB or the detective assigned to her case to testify. He also claims it was misconduct for the prosecutor to point out that he had the ability to subpoena witnesses, and to refer to him as a "child molester." He further contends that his trial counsel's failure to object to the foregoing statements constitutes ineffective assistance.

**{¶47}** The prosecutor made the following statements in closing argument:

**{¶48}** "She told [Gonzalez]. She told her mother. She told CSB two times. She told the police two times. She told the prosecutor's office before she came in

here. She's always been consistent, always been consistent. Because if she wasn't consistent, [Appellant's trial counsel] would have been all over that, and he wasn't." (Tr., p. 412.)

{¶49} Although Appellant's trial counsel did not object to the state's argument, he stated in his closing that, "[y]ou didn't hear from police officers. You didn't hear from the mother who supposedly was the catalyst involved in this statement. You didn't hear from her. We have no burden. We don't have to call anybody or do anything because we don't want to be here." (Tr., p. 438.)

{¶50} The state then argued:

{¶51} "[H.R.] was consistent throughout every time she talked. She mentioned the same type of acts the defendant would perform, make her perform on him. She said she was afraid she wouldn't be believed because she had a mother she didn't get along with, a grandmother who treated her differently, and no one she could go to until she had [Gonzalez], someone she trusted. * * * Remember [Appellant's trial counsel] kept asking her, did you tell this person this; did you tell that person that? Well, didn't you know this, and -- he has the right to subpoena witnesses." (Tr., pp. 447-448.)

{¶52} Appellant's trial counsel objected to the state's comment and requested a curative instruction underscoring the fact that Appellant did not have the burden of proof at trial. The trial court sustained the objection and instructed the jury to disregard the last statement of the prosecutor. (Tr., p. 449.)

{¶53} The latitude afforded prosecutors in closing argument does not " 'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial' or 'allud[ing] to matters not supported by admissible evidence.' " *State v. Freeman* (2000), 138 Ohio App.3d 408, 419, 741 N.E.2d 566, quoting *State v. Hart* (1994), 94 Ohio App.3d 665, 671, 641 N.E.2d 755. A closing argument is considered in its entirety to determine whether it was prejudicial. *State v. Moritz* (1980), 63 Ohio St.2d 150, 157, 407 N.E.2d 1268.

{¶54} While it is true that Appellant's trial counsel initially failed to object to the state's characterization of H.R.'s testimony as consistent in the first part of the state's closing argument, it is not clear from the record that the statement deprived Appellant of a fair trial. First, in response to the state's consistency argument, Appellant's trial counsel clearly argued during his closing argument that the burden of proof rests with the state, and that the state did not call Appellant's mother or the police officers who investigated H.R.'s allegations to testify.

{¶55} More importantly, when the state continued its argument regarding the consistency of H.R.'s statements during its final closing argument and made the vague, disjointed reference to subpoenas, Appellant's trial counsel objected to the argument, the trial court sustained the objection and instructed the jury to disregard the state's argument. A jury is presumed to follow the instructions of the trial court. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶93.

{¶56} Finally, although the jury obviously credited most of H.R.'s testimony, the jury acquitted Appellant of the crimes corresponding to the charges that he

continuously molested H.R. beginning at the age of ten. The jury was obviously able to discern those charges that were supported by H.R.'s testimony at trial, and was not so distracted by the state's arguments that they were unable to fairly consider the evidence before them.

**{¶57}** Appellant relies upon the Sixth Circuit Court of Appeals' decision *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), to argue that the state's "consistency" argument constituted prosecutorial misconduct. The *Washington* Court held that the state's argument that the victim's account of the crime was consistent over time, despite the fact that none of her previous statements were a part of the record, warranted habeas corpus relief.

**{¶58}** However, in *Washington*, the Sixth Circuit concluded that the defendant suffered prejudice as a result of his trial counsel's failure to object to the state's egregious character attacks, Id. at 704, his trial counsel's failure to understand the difference between the reasonable doubt standard and the clear and convincing doubt standard, Id. at 708, as well as his failure to object to the state's testimony regarding the consistent nature of the victim's testimony.

**{¶59}** Moreover, the defendant's trial counsel in *Washington* did not object to the state's "consistent statement" argument. Here, Appellant's trial counsel ultimately objected to the state's argument, the objection was sustained, and the jury was instructed to disregard the state's argument. Consequently, the prosecutor's conduct in *Washington* was far more extreme than in the case sub judice, and the defendant

in *Washington* did not enjoy the benefit of an objection sustained by the trial court. Therefore, Appellant's reliance on *Washington* is misplaced.

**{¶60}** Next, Appellant argues that he was denied a fair trial when the prosecutor displayed a bathing suit and underwear during closing argument, despite the fact that the clothing was not admitted into evidence at trial. While it is clear that a prosecutor cannot rely on evidence outside the record, H.R.'s testimony about the clothing was a part of the record. (Tr., p. 259.) In addition, the clothing was published to the jury during H.R.'s direct testimony. Therefore, despite the state's error in again displaying the clothing to the jury during closing argument, we do not find that the prosecutor's misconduct deprived Appellant of a fair trial.

**{¶61}** Finally, with respect to the state's characterization of Appellant as a "child molester" in opening and closing argument, the state is permitted to summarize the evidence at trial. H.R.'s testimony established that Appellant had been molesting her on a regular basis for several years. Furthermore, while name-calling is unprofessional and unacceptable, the test for prosecutorial misconduct focuses on "the fairness of the trial, not the culpability of the prosecutor." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶91. Appellant does not explain how the state's comments deprived him of a fair trial.

**{¶62}** Because the state's conduct, while questionable, did not deprive Appellant of a fair trial, his second and fourth assignments of error are overruled.

<u>Assignment of Error No. 3:</u>

**{¶63}** "The Trial Court Lacked Authority to Try Appellant on Count [sic] 7, 8, and 9 of the Indictment as the Count [sic] Failed to State an Offense in Violation of U.S. CONST., amend. XIV and Ohio CONST., art. I, §10."

**{¶64}** The indictment in this case omitted the requisite mental state of the crime of gross sexual imposition involving a victim under the age of thirteen. Appellant raised the argument before the trial court in his Crim.R. 29 motion for acquittal. The state argued that gross sexual imposition is a strict liability crime. (Tr., p. 396.)

**{¶65}** Although the subsection of the gross sexual imposition statute that charges the commission of that crime by threat of force includes the term "purposely," the subsection that charges the commission of the crime against a victim under the age of thirteen does not include a culpable mental state.

**{¶66}** In *State v. Clashman* (Feb. 26, 1999), 7th Dist. No. 97 JE 8, this Court wrote that the culpable mental state for gross sexual imposition involving a child under the age of thirteen is "purposely," based upon the definition of "sexual contact." Id. at *6, see also *Starcher v. Eberlin*, 7th Dist. No. 08 BE 19, 2008-Ohio-5042, ¶17, fn. 1. "Sexual contact" is defined by the code as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶67}** Crim.R. 7(B) plainly states that an, "indictment shall * * * contain a statement that the defendant has committed a public offense specified in the

indictment." The rule further states, "[t]he statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." An indictment that omits an essential element fails to charge an offense. *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶38, citing *State v. Wozniak* (1961), 172 Ohio St. 517, 178 N.E.2d 800.

**{¶68}** However, the Ohio Supreme Court has cautioned against the application of structural error in all but those rare cases where multiple violations of a defendant's rights follow the defective indictment. *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, ¶6 ("*Colon II*"), citing *Colon* at ¶29. In cases where errors in the complaint do not " 'permeate the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence,' " the plain-error analysis under Crim.R. 52(B) is the proper standard of review. *Colon II*, ¶8 citing *Colon*, at ¶23, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶17. In *Colon II*, the Ohio Supreme Court instructed: "Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis." Id. at ¶8.

**{¶69}** In *Colon*, the indictment omitted the mens rea element of recklessness, which was also omitted from the jury charge. The Supreme Court concluded that the defective indictment constituted structural error because of several constitutional

violations: the indictment did not include all of the elements of the offense charged, which impinged upon the defendant's right to a grand jury indictment; there was no evidence on the record that the defendant was aware that recklessness was an element of the crime or that the state produced any evidence that the defendant acted recklessly, which violated his due process rights; and the defect allowed the state to treat aggravated burglary as a strict liability crime in its closing argument. *Colon* at ¶32.

**{¶70}** Here, the jury instructions included the definition of "sexual contact," and, therefore, the jury was instructed that the state had to prove beyond a reasonable doubt that Appellant touched H.R. "for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Moreover, the definition of "purposely" was provided to the jury during the instructions for the rape crimes. Consequently, the concerns raised in *Colon* are not present in the case sub judice.

**{¶71}** Accordingly, Appellant's third assignment of error is overruled.

<u>Assignment of Error No. 5:</u>

**{¶72}** "The trial court denied Appellant due process under the Fourteenth Amendment in that his conviction was against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented."

**{¶73}** A weight of the evidence challenge concerns, " 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their

minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " (Emphasis omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594.

**{¶74}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Id. at 387. The court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses. Id. Additionally, the court determines, " 'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The reversal of a conviction based upon manifest weight grounds should only occur in the most, " 'exceptional case in which the evidence weighs heavily against the conviction.' " Id. at 387, quoting *Martin* at 175.

**{¶75}** Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶10. In a manifest weight analysis, the appellate court must be mindful that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

**{¶76}** The testimony of a single witness, if believed by the trier-of-fact, is sufficient to support a conviction. *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶51-57. Here, Appellant's conviction turned entirely on H.R.'s credibility. In other words, H.R.'s uncontroverted testimony established the crimes for which Appellant was convicted, and an acquittal was only possible if the jury did not believe H.R.'s testimony. Evidently, the jury did not believe that H.R. fabricated the story. Furthermore, Appellant has not pointed to any inconsistency in H.R.'s testimony to demonstrate that the jury lost its way in crediting her story.

**{¶77}** As a consequence, Appellant's fifth assignment of error is overruled, and his conviction is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.